IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DMITRY FASOLYAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06 cv1126 |
| ) | Judge Richard W. Roberts |
| ) | |
| THE CRADLE SOCIETY, INC., ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Dmitry Fasolyak ("Fasolyak" or "plaintiff"), by and through the undersigned counsel, submits this memorandum of law in opposition to the Motion to Dismiss of defendant The Cradle Society, Inc., and asks the Court to deny said Motion to Dismiss for the reasons set forth below.

**Background, Introduction, and Summary of Argument**

On June 21, 2006, plaintiff filed his Complaint against defendant The Cradle Society, Inc. ("Cradle Society" or "defendant"). The Complaint alleges that Cradle Society materially breached its contract with plaintiff and is liable to plaintiff for fraud and deceit, negligent misrepresentation, unjust enrichment, *quantum meruit*, tortious interference with prospective economic advantage, and an accounting.

Plaintiff is an individual and a resident of the State of Maryland, the defendant is an Illinois corporation, with its principal office in Evanston, Illinois, and this is a diversity action. The Court's jurisdiction is predicated on 28 U.S.C. § 1332 and, necessarily, on the District of Columbia long-arm statute.

On August 1, 2006, defendant filed a Motion to Dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, claiming *only* that plaintiff's complaint does not allege sufficient facts to show that the Court has personal jurisdiction over the defendant. Cradle Society submits no affidavit or other evidence to support its claim that this Court lacks personal jurisdiction in this matter.

While defendant relies only on the argument that the complaint does not allege sufficient facts to support personal jurisdiction over defendant, the Motion to Dismiss refers extensively to an opinion of the United States District Court for the District of Maryland ruling that the court lacked personal jurisdiction over Cradle Society in Maryland. The fact that the Maryland court found that Maryland lacked personal jurisdiction over Cradle Society has no bearing on the issue of whether Cradle Society had sufficient minimum contract with the *District of Columbia* to support personal jurisdiction in the *District of Columbia*. However, while the decision of the Maryland court was based on facts specific to the parties' activities in Maryland, all of which are irrelevant to this case, evidence presented by Cradle Society in the Maryland case is relevant here. In the Maryland case, Cradle Society urged the court to dismiss the case based on an affidavit of a senior corporate officer of Cradle Society stating that *all* meetings known to her relevant to the contract at issue occurred in the *District of Columbia*, and *not* in Maryland.

While Cradle Society's admissions to the Maryland court strongly support a finding that personal jurisdiction is appropriate in the District of Columbia, Fasolyak's complaint, his attached affidavit, and other evidence show there was extensive contract performance by both plaintiff and defendant in the District of Columbia. Indeed, Cradle Society's attestation that *all* meetings between plaintiff and defendant relating to the contract at issue were held in Washington, D.C. understates the extensive contacts with, and contract performance in this

2

jurisdiction.  Fasolyak and Cradle Society and its agents held multiple meetings in Washington, D.C., related to the formation and performance of the contract, including high-level meetings with officers and directors of Cradle Society, members of Congress, and representatives of a foreign government.  Fasolyak, either directly or through his agents, traveled to Washington, D.C., *hundreds of times* to perform his mandatory duties under the contract.  Fasolyak held extensive meetings with visiting officials of the Russian Federation in Washington, D.C., and, with Cradle Society, met with U.S. officials and representatives here.  Cradle Society has had – and continues to have – significant and extensive contacts in and with the District of Columbia, and all of those contacts relate directly to the performance of the contract at issue in this case.  Further, although secondary to the extensive contract performance in this jurisdiction, plaintiff alleges that defendant caused plaintiff to suffer tortious injury in the District of Columbia by defrauding plaintiff with respect to the services he rendered here.  In sum, defendant's contacts with the District of Columbia exceed by a wide margin the minimum contacts required to satisfy both the District's long-arm statute and constitutional due process.  The defendant's Motion to Dismiss must be denied.

## Argument

For a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the District of Columbia long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirement of the Fourteenth Amendment.  *GTE New Media Servs. Inc. v. Bellsouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000).  A defendant must have "minimum contacts" with the District of Columbia, such that to require the defendant to defend its interests in that state

"does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

This Court may exercise general jurisdiction for claims not arising in the District of Columbia but may do so only if the defendant corporation is engaged in "continuous and systematic" business here. *Gorman v. Cashback Realty.Com, Inc.,* 293 F.3d 506, 509 (D.C. Cir. 2002). Specific personal jurisdiction may be exercised under a long-arm statute for claims related to a defendant party's contact with this jurisdiction. The District of Columbia long-arm statute, D.C. Code § 13-423(a)(1) (2001), provides that a D.C. court can exercise personal jurisdiction over a defendant if the claim arises from the defendant's "transacting any business in the District of Columbia." *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 71 (D.D.C 1992). When a plaintiff asserts personal jurisdiction based on a defendant's "transacting any business" in the District of Columbia under D.C. Code § 13-423(a)(1), the claim asserted must relate to the defendant's actions in the District of Columbia. *Id.;* D.C. Code § 13-423(b).

The District of Columbia long-arm statute is given an expansive interpretation that is "coextensive with the Constitution's due process requirements and thus merg[es] into a single inquiry." *GTE New Media Servs., Inc. v. Bell South Corp.,* 199 F.3d 1343, 1347 (2000); *Mouzavires v. Baxter,* 434 A.2d 988, 992 (D.C. 1981). In other words, the D.C. long-arm statute authorizes personal jurisdiction coextensive with the outer limits of the due process clause. In considering a motion to dismiss for lack of personal jurisdiction, "The general rule is that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First Chicago Int'l v. United Exch. Co., Ltd.,* 836 F.2d 1375, 1378 (D.C. Cir. 1988). A party defending a motion to dismiss for lack of personal jurisdiction may submit affidavits and any other relevant matter to assist the court and a court may hold hearings on the issue. *Johnson v.*

4

*McCarthy,* 2006 U.S. Lexis 54264 (D.D.C.) Slip Op. at 8. "In determining whether personal jurisdiction exists, 'factual discrepancies appearing in the record must be resolved in favor of the plaintiff.'" *Crane v. New York Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990), *citing Reuber v. United States,* 750 F.2d 1039, 1052 (D.C. Cir. 1984). A party faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery so that a defendant cannot defeat the jurisdiction simply by withholding information. *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996).

### A. There Was Sufficient Performance of the Contract in The District of Columbia to Support Personal Jurisdiction.

The key inquiry in any case involving long-arm statutes is whether there have been "minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), *quoting Milliken v. Meyer,* 311 U.S. 457, 463 (1940). In a contract action, an individual has minimum contacts with a forum if he enters into a contract that has a "substantial connection" with the forum. *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957). A court must evaluate the "parties' actual course of dealing" under a contract to determine whether assertion of personal jurisdiction satisfies the due process clause. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 479 (1985), *quoting Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316 (1943). In a contract action, it is sufficient if the claim subject to dispute "grew directly out of 'a contract which had a *substantial* connection with that State'" *Burger King v. Rudzewicz,* 471 U.S. at 479, n.22, *citing McGee,* 355 U.S. at 223.

Personal jurisdiction over Cradle Society is appropriate because there was substantial performance of the contract at issue in the District of Columbia. See *Helmer v. Doletskaya,* 393 F.3d 201, 207 (D.C. Cir. 2004) (the formation and performance of a contract in the District of

5

Columbia and the parties' contemplated future contacts with the District as a condition of performance gave the district court personal jurisdiction over the nonresident defendant); *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F. Supp.2d 142, 146 (D.D.C. 2003) (specific personal jurisdiction over a non-resident defendant permissible because the defendant had entered into a contract with the plaintiff requiring some performance in the District of Columbia). The contract performance in the host jurisdiction may be by either the plaintiff or the defendant. See *Burger King Corp. v. Rudzewicz,* 471 U.S. at 479, where an out-of-state defendant had never even visited Florida, but personal jurisdiction was permitted because Burger King itself performed the contract between the defendant and Burger King in Florida. Where commercial activities are "carried on in behalf of" an out-of-state party, those activities may sometimes be ascribed to the party. *Int'l Shoe Co*. v. *Washington* at 320.

      The complaint alleges substantial performance of the contract in Washington, D.C., and the affidavits of plaintiff Dmitry Fasolyak and an officer of defendant show that the contract was in fact formed and substantially performed in this jurisdiction. As a starting point, plaintiff and defendant met in Washington, D.C., and negotiated the terms of their business relationship and of the contract at issue here. (Aff. Fasolyak, Ex. 1, ¶¶ 5-6.) The complaint alleges that the contract between Fasolyak and Cradle Society was performed to a substantial degree by plaintiff and defendant in Washington, D.C. (Compl. ¶ 14). One of Fasolyak's responsibilities under the contract was to register children adopted through Cradle Society at the Embassy of the Russian Federation in Washington, D.C. (Compl. ¶¶ 15-16). Each adoption required Fasolyak to visit the Russian Embassy in Washington, D.C. to complete the adoption process by establishing that the adopted child had taken residence with the adoptive family in the United States. To perform this function, Cradle Society sent adoption documents to Fasolyak and requested that Fasolyak

6

present these documents at the Russian Embassy in Washington, D.C.  (Aff. Fasolyak, Ex. 1, ¶¶ 18-22.)  After officials at the Russian Embassy were satisfied with the presentation Fasolyak made, Fasolyak obtained documents from the Russian Embassy in Washington, D.C., at the request of Cradle Society, and sent them to Cradle Society.  (Aff. Fasolyak, Ex. 1, ¶¶ 18-22.)  Fasolyak, either directly or through his agents and employees, made *hundreds* of trips to the Russian Embassy in Washington, D.C., in performance of this one aspect of his contractual obligations to Cradle Society.  (Aff. Fasolyak, Ex. 1, ¶ 22.)   The meetings at the Russian Embassy were pursuant to explicit instructions from Cradle Society.

 While the parties' extensive contact with the District of Columbia in the "actual course of dealing" under their contract is more than sufficient to support personal jurisdiction here, personal jurisdiction is compelled because performance by Fasolyak in the District of Columbia was required by the contract.  *Ulico Cas. Co*. at 146.  Fasolyak was required to process adoption papers at the Russian Embassy in Washington, D.C., because that Russian Consulate in Washington, D.C. has jurisdiction over Maryland and Illinois.  Exhibit 2 is a portion of a website maintained by the Embassy of the Russian Republic showing that the Washington, D.C., embassy has jurisdiction for Maryland and Illinois.  Should there be any question about Cradle Society's contention that the parties' contract required Fasolyak to handle Embassy processing of the adoption applications in Washington, D.C., counsel for Cradle Society sent Fasolyak at least two letters threatening to sue him if he did not perform this service, even after litigation was filed in this matter  (*See* Exhibit 3).  Although Fasolyak did in fact process every adoption through the Russian Embassy in Washington, D.C., Cradle Society nevertheless filed suit against Fasolyak in

7

Cook County Illinois Circuit Court alleging that Fasolyak had failed to file the documents with the Russian Embassy,[1] as follows:

> 23. On information and belief, Fasolyak has committed additional breaches of the Agreement including, but not limited to, the failure to ensure that required documentation is sent to appropriate government offices in the Russian Federation in order to provide proof to the Russian government that adopted children have been properly registered with the Russian embassy in the United States. Fasolyak's failure to ensure that required documentation is sent to appropriate government offices in the Russian Federation has damaged The Cradle's reputation and standing with the government of the Russian Federation and may diminish The Cradle's ability to perform adoptions in the Russian Federation.

(Chicago Compl., Ex. 4, ¶ 23.)

Moreover, Cradle Society could not conduct any adoption-related activities in the Russian Federation without first obtaining Russian government accreditation. To help Cradle Society obtain that crucial accreditation (and then restore it, after it was briefly suspended in 2005), and to promote Cradle Society's Russian adoption program, Fasolyak had multiple meetings with Russian government officials in Washington, D.C. (Compl. ¶¶ 17, 18, 19, 34 and 35; Aff. Fasolyak, Ex. 1, ¶¶ 9-13)

There were many meetings between Fasolyak and Cradle Society in Washington, D.C. As a starting point, Cradle Society submitted an affidavit to the District Court in Maryland stating that all contacts between Fasolyak and Cradle Society related to the contract at issue in this case occurred in Washington, D.C., as follows:

> 3. To the best of my information, knowledge and belief, the meetings between Dmitry Fasolyak and representatives of The Cradle Society were not conducted in Maryland. All such meetings known to me were conducted in the District of Columbia.

---

[1] Fasolyak has moved to dismiss the Illinois State Court action because it was filed later in time than the present action, and because it is a compulsory counterclaim that must be filed in this action, if it is filed at all, under Federal Rules of Civil Procedure Rule 13.

(Aff. Hageman, Ex. 5, ¶ 1.)

While this statement is inaccurate, there were substantial meetings in Washington, D.C. The complaint alleges that there were meetings between Fasolyak and Cradle Society in Washington, D.C. (Compl., Ex. 4, ¶¶ 23, 24, and 25), and indeed Fasolyak had many meetings regarding Cradle Society business, including meetings with employees of Cradle Society in Washington, D.C. More specifically,

1. Fasolyak had multiple meetings in Washington, D.C. with officers and employees of The Cradle Society between 2000 and 2006. The purpose of the meetings was to negotiate and discuss the terms of the parties contract and to advance the purpose of the Contract and the business relationship between The Cradle Society and Fasolyak. (Aff. Fasolyak ¶ 5.);

2. Fasolyak held separate meetings with no less than *five* employees of Cradle Society in Washington, D.C. including the Executive Director, the Chairman of the Board of Directors, and two employees who had traveled from Russia to meet with Fasolyak in Washington, D.C. Fasolyak also met with counsel for Cradle Society in Washington, D.C. (Aff. Fasolyak ¶¶ 6-8.);

3. Fasolyak held several meetings with officials of the Russian Federation in Washington, D.C. The meetings related to the business of Cradle Society in Russia. (Aff. Fasolyak ¶¶ 10-12.);

4. Fasolyak made arrangements in Washington, D.C. relating to a visit to Russia by a U.S. Senator that benefited Cradle Society. (Aff. Fasolyak ¶ 13.);

5. Fasolyak attended several meetings hosted by the Congressional Coalition on Adoption Institute (CCAI) in Washington, D.C., where he met with employees of Cradle Society. (Aff. Fasolyak ¶ 16.); and

6. Fasolyak met with representatives of The Cradle Society at an event of the Joint Council on International Children's Services at the Hyatt Hotel on M Street, N.W., in Washington, D.C. (Aff. Fasolyak ¶ 17.).

**B.     There is Personal Jurisdiction for Tort Because Cradle Society Caused Harm in the District of Columbia.**

The only nexus required under the District of Columbia long-arm statute between the District of Columbia and the nonresident defendant is "some affirmative act by which the

9

defendant brings itself within the jurisdiction and establishes minimum contacts," *Cohane v. Arpeja-California, Inc.,* 385 A.2d 153, 158 (D.C. App. 1978), *citing Hanson v. Denckla,* 357 U.S. 235 (1958); but the jurisdiction thereby conferred is restricted to claims arising from the particular transaction of business carried out in the District. *Id.* In tort cases, the plaintiff must show that defendant's action in the District of Columbia caused harm to the plaintiff. *Berwyn Fuel, Inc. v. Hogan,* 399 A.2d 79, 80 (D.C. 1979). Fasolyak's tort claims for negligent and intentional misrepresentation are based on the actions of Cradle Society in the District of Columbia (Compl. ¶¶ 48-51). Cradle Society represented to Fasolyak that it would pay Fasolyak fees on each and every Russian adoption processed by Cradle Society if Fasolyak succeeded in obtaining re-accreditation for Cradle Society to perform adoptions in Russia (Compl. ¶¶ 49 and 51). In reliance on these promises, Fasolyak met with officials of the Russian Federation in the District of Columbia (Compl. ¶¶ 50-51) and helped obtain re-accreditation for defendant from the Russian government to perform adoptions. (Compl. ¶ 55.) Cradle Society caused Fasolyak harm when, as alleged, it made these knowingly false statements to Fasolyak in the District of Columbia.

### C. The Court May Exercise General Jurisdiction Because Cradle Society Conducted Continuous and Systematic Business in Washington, D.C.

Assuming, *arguendo,* that the claims asserted by plaintiff here do not arise from the parties performance of the contract at issue in this jurisdiction, District of Columbia law permits a court to exercise general jurisdiction for claims not arising in the District of Columbia if a corporation is doing business here. *Gorman v. Cashback Realty.Com, Inc.,* 293 F.3d 506, 509 (D.C. Cir. 2002). Such general jurisdiction may be asserted only if a corporation's business in the District of Columbia is "continuous and systematic" but activities here may be "continuous and systematic" even if they are only a limited part of a party's general business. *Gorman v.*

*Cashback Realty,* 293 F.3d at 509-510.  One sale per month over a two-year period by a mail order business has been deemed sufficient contract to establish a "continuous and systematic" presence in a state so as to subject a defendant to general personal jurisdiction.  *Quill Corp. v. North Dakota,* 504 U.S. 298, 308 (1992). The affidavit of Fasolyak shows that the Cradle Society has had *hundreds* of contacts with the District of Columbia over the past two years and that such contacts are regular and systematic.  (Aff. Fasolyak, Ex. 1, ¶ 22.)  Each and every Russian adoption case requires multiple activities in the District of Columbia, including processing of paperwork at the Russian Embassy and filing of visa applications for the adoptive parents.  (Aff. Fasolyak, Ex. 1, ¶¶18-22.)  Russian adoptions account for about twenty-five percent of Cradle Society's adoption business.  (Aff. Fasolyak, Ex. 1, ¶ 23.)  Fasolyak asserts that Cradle Society's general activities in Washington, D.C. are much more extensive, regular and systematic.  Cradle Society is engaged primarily in foreign adoptions, and Fasoyak believes that Cradle Society employees are present in the District of Columbia on a regular basis.  This includes membership in and regular meetings with adoption-related organizations in Washington, D.C., regular meetings with foreign officials here, substantial visa processing activities and regular interaction with the U.S. Department of State, other government agencies and international organizations based in Washington, D.C. (Aff. Fasolyak, Ex. 1, ¶¶ 10-17.)

      The complaint, the affidavit of Fasolyak, and the other evidence submitted presents a compelling case for the Court to exercise both specific and general personal jurisdiction over Cradle Society.  In the event that the Court considers the allegations and evidence submitted insufficient, plaintiff respectfully requests leave to take discovery on jurisdictional issues.  "A party faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information

on its contacts with the forum." *El-Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C. Cir. 1996); *GTE New Media Service,* at 1351.

## Conclusion.

Plaintiff respectfully submits that the Motion to Dismiss must be denied.

Respectfully submitted,

_____/s/_____
John D. Quinn, Esq.
Bar No. 267302
SALE & QUINN, P.C.
910 16th Street, N.W.
Suite 500
Washington, D.C. 20006
Telephone:   (202) 833-4170
Fax:         (202) 887-5137
E-mail:      JDQCSQ@aol.com

Dmitri A. Chernov, Esq.
Three Bethesda Metro Center
Suite 910
Bethesda, MD 20814
Telephone:   (240) 447-8625
Fax:         (301) 907-7790
E-mail:      Dchernov@aol.com

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was delivered by U.S. mail, postage prepaid, this 14th day of August, 2006, to:

> Robert P. Lynch, Esq.
> MacLeay, Lynch, Gregg & Lynch, P.C.
> Suite 802
> 1629 K Street, N.W.
> Washington, DC  20006

_____/s/_____
John D. Quinn