**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DMITRY FASOLYAK | : | |
|    Plaintiff, | : | |
| v. | : | Case Number 1:06cv01126 |
| THE CRADLE SOCIETY, INC. | : | Judge Richard W. Roberts |
|    Defendant. | : | Deck Type:  Contract |

### DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM OF LAW

Defendant, The Cradle Society, Inc., respectfully submits its reply to the Plaintiff's Memorandum of Law in Opposition to the Defendant's Motion to Dismiss and respectfully requests that its Motion to Dismiss be granted.

The Plaintiff contends that the Defendant's contacts with the District of Columbia are sufficient to permit this Court to exercise personal jurisdiction over it.  As set forth below, the Plaintiff's argument falls short in terms of both facts and law.

**A. Defendant's Contacts with the District of Columbia were Random and Incidental**

A defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person," See Keeton v. Hustler Magazine Inc., 465 U.S., 770, 774 (1984); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 US 408, 417 (1984).

The Plaintiff alleges "as a starting point, Plaintiff and Defendant met in Washington, D.C. and negotiated the terms of their business relationship and of the contract at issue here." Plaintiff's Memorandum of Law, p. 6.  In an affidavit filed with United States District Court for the District of Maryland the plaintiff told a very different story:

> 12. In 2004, I and The Cradle Society executed a formal agreement concerning my service to The Cradle Society ("Agreement"). The memorandum of the Agreement

> was prepared by The Cradle Society and sent to me in Maryland. I reviewed that memorandum in Maryland and discussed it with employees and representatives of The Cradle Society over the telephone from Maryland. I made no changes to the memorandum of the Agreement received from The Cradle Society, signed it in Maryland, and sent it back to The Cradle Society from Maryland.
> 13. It was known that I reside in Maryland and it was known, understood, and anticipated that I and persons working under my direction would perform many of the services pursuant to the Agreement in and from Maryland.

<u>Maryland Affidavit</u>, attached hereto as Exhibit "A," p. 3.

In the Maryland litigation, where the Plaintiff argued a long list of Maryland contacts, Judge Alexander Williams, Jr. found that the circumstances of this case points toward Russia, not Maryland, as the place of performance. Judge Williams stated:

> Although, Plaintiff probably made payments from an account in Maryland, the payments were used to buy goods and services in Russia, and Plaintiff was contracted to provide advice and assistance in adopting children from Russia. Furthermore, the Defendant's duties and alleged wrongdoing relate to actions in Russia: submitting expense reports, making defamatory statements, and personal choices. Considering that the place of performance for this contract was in Russia, Maryland courts would not automatically have personal jurisdiction over Defendant.

<u>Exhibit B to Defendant's Motion to Dismiss</u>, p. 8.

While the plaintiff alleges in the present matter that "the contract was in fact formed and substantially performed in this jurisdiction" the allegation is unsupported. Defendant's contacts with the District of Columbia were merely incidental. The plaintiff alleges the parties' contract required Fasolyak to handle Embassy processing of the adoption applications in Washington, DC. This allegation is blatantly false. The duties of consultant (the plaintiff) are clearly spelled out in the Agreement between the parties:

> <u>Duties of Consultant</u>: Consultant shall provide advice and coordination to The Cradle with respect to all activities in the Russian Federation which are necessary to achieve the placement of children from the Russian Federation with adoptive parents residing in the United States. Such coordinating activities shall include (without limitation):

    (a)  Faithfully supporting, building and promoting The Cradle's Russian Program within the Russian Federation, including the Ministry of Education;

    (b)  Assisting The Cradle in identifying and establishing appropriate working relationships with those persons in the Russian Federation who are qualified and appropriate to perform the various functions which are necessary to operate the Russian Program and assisting The Cradle in the supervision of Such persons.

    (c)  Advising the Cradle with respect to the practices and procedures Required by the Government of the Russian Federation to operate the Russian Program in accordance with Russian law and regulations, and with respect to all actions necessary to maintain the accreditation of The Cradle by the Russian Federation;

    (d)  Assisting The Cradle with all actions necessary to obtain referrals of children eligible for adoption within four months, on average, of the times completed documentation is provided by The Cradle to the Moscow office, and ensuring that all actions are taken in Russia which are necessary to complete adoptions under Russian law and regulations.

    (e)  Ensuring that the Russian Program operates in compliance with all applicable Russian laws and regulation and, when applicable, the Hague Convention on Protection of Children and Cooperation in Respect of Inter-country Adoption and the Regulations issued by the United States Department of State (as such Convention and Regulations affect activities in Russia).

Contract, attached to Plaintiff's Complaint, pp. 1-2.

      The duties outlined in the contract between the parties clearly indicate that Russia is the place of performance. Plaintiff relies upon Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) to advance his jurisdictional argument, however the case is easily distinguishable. The Burger King case involved a franchise dispute which grew directly out of a contract which had a substantial connection with the state of Florida. Instead of operating an independent local enterprise, Mr. Rudzewicz deliberately "reached out beyond" Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would drive from affiliation with a nationwide organization. Burger King Corp v. Rudzewicz, 471 U.S. at 479 (quoting Travelers Health Assn. v. Virginia, 339, U.S. 643 at 647 (1950)). Upon

approval, Mr. Rudzewicz entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. Burger King at 480.

The defendant's limited meetings in Washington, D.C. with the Plaintiff does not indicate that the Defendant had created "continuing obligations" between the business and residents of the forum state. Travelers Health Assn v. Virginia, 339 U.S. at 648. In Burger King, the Court noted that the Miami office handled all credit problems, ordered cost-cutting measures, negotiated for a partial refinancing of the franchisees' debts, communicated directly with the franchisees' in an attempt to resolve any dispute, and was responsible for all termination matters. Nor were the defendant's efforts "purposefully directed" toward the residents of Washington D.C. Keeton v. Hustler Magazine, Inc., 465 U.S. at 774. In short, The Cradle Society was not advertising or selling anything in Washington, D.C. The meetings with the plaintiff were simply incidental to the plaintiff's job of facilitating adoptions in the Russian Federation.

### B. There was no Tort Committed in the District of Columbia

Berwyn Fuel, Inc. v. Hogan, 399 A.2d 79 (D.C. App. 1979), provides an excellent example of how a tort must "arise from" a defendant's activities in the forum state. In Berwyn Fuel, the defendant was a Maryland corporation doing some business in the District of Columbia. The defendant allegedly caused personal injuries to plaintiff in an accident involving one of its delivery trucks while the truck was making a delivery in Maryland. Suit was filed in the District of Columbia (without a Maryland suit filed) and the court discussed subject matter jurisdiction, personal jurisdiction, forum non conveniens, and concluded dismissal was appropriate. The court specifically referenced D.C. Code § 13-423(a)(1) which allows the Superior Court to exercise personal jurisdiction over a person as to a claim for relief arising from the person's transacting any business in the District of Columbia. The court however specifically referenced § 13-423(b): "When jurisdiction over a person is based solely upon this

4

Section, only a claim for relief arising from acts enumerated in this Section may be asserted against him." The court reasoned that "minimum contacts" brings defendant into the jurisdiction, but further stated expressly "the jurisdiction thereby conferred is restricted to claims **arising from** the particular transaction of business carried out in the District." (Emphasis supplied).

The Berwyn Fuel court concluded that the plaintiff's claim for relief from the accident which .gave rise to his injuries and damage did not arise from the defendant's deliveries in the District of Columbia, but from activity which occurred completely within the State of Maryland. Furthermore, the court addressed plaintiff's argument which asserted that personal jurisdiction could be establish under D.C. Code Title 13-423(a)(4), "causing tortuous injury in the District of Columbia by an act or omission outside the District of Columbia," but the court stated expressly that the tortuous injury on which the complaint was based was "caused" in Maryland by the collision of the appellant's truck with appellee's van. Therefore sub-section (a)(4) was clearly inapplicable and could not have been a source of the court's personal jurisdiction over appellant.

In the present matter, the Plaintiff makes vague assertions about fee payments from the Defendant, an arrangement that is controlled by the contract between the parties. The plaintiff has not provided sufficient evidence that any tort occurred in the District of Columbia, which would allow for the exercise of personal jurisdiction.

C.  **No "Continuous or Systematic Contact" with the District of Columbia**

The Plaintiff further argues that this Court may exercise general jurisdiction because he claims the Defendant conducted continuous and systematic business in Washington, D.C. His chief basis for this allegation is his own affidavit, in which he states that he had to conduct numerous meetings with Russian officials at the Russian Embassy. Even assuming that the Plaintiff's affidavit is accurate, the nature of these meetings does not lend itself to the exercise of general jurisdiction over the Defendant.

A plaintiff may establish general jurisdiction over a foreign corporate defendant by way of D.C. Code § 13-334(a).  See Lee v. State Compensation Ins. Fund, 2005 U.S. Dist. LEXIS 16900, Civil Action No. 05-670, 8 (D.D.C. 2005).  This Court's opinion in Lee also provided a short and accurate summation of the test for whether a defendant may be subject to its general personal jurisdiction:

> The test for general jurisdiction is whether defendant's contacts with the District of Columbia are "continuous and systematic."  *Gorman v. Ameritrade Holding Corp.*, 352 U.S. App. D.C. 229, 293 F.3d 506, 509 (D.C. Cir. 2002).  Furthermore, the exercise of either specific or general jurisdiction must meet the constitutional minimum required for due process.  See id.  The requirements of due process "are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Id.  (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945))(internal quotations omitted)).  These minimum contacts must be grounded in "some act by which the defendant purposefully avails itself of the privilege of conducting activities with the forum state, thus invoking the benefits and privileges of its laws."  *Asahi Metal Industry v. Superior Court of California*, 480 U.S. 102, 109, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).  In short, a court will find minimum contacts in any case where the defendant's conduct is such that "he should reasonably anticipate being haled into court" in the forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980).

Lee, 2005 U.S. Dist. LEXIS 16900 at 10.

The Plaintiff's contention that his meetings with Russian officials constitute "continuous and systematic" contacts with the District of Columbia is erroneous.  No matter how many times the Plaintiff may have visited Russian officials within the District, such meetings were plainly not meant to facilitate any business within the District of Columbia.  The Plaintiff has not set forth any evidence that the Defendant sought out residents of the District in order to further its mission.  Instead, all Plaintiff has asserted is that the Defendant sought to conduct activities with the Russian federation.  There is nothing to suggest that the Defendant purposefully availed

itself of the privilege of conducting activities with the District. Indeed, the contract between the parties dictates only that the Plaintiff facilitate relations between Russian officials and the Defendant. The geographic presence of the Russian embassy within the borders of the District of Columbia is merely incidental to the Defendant's goals and does not give the Defendant any reason to anticipate that it will be haled into court within the District. See Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985)("Purposeful availment" ensures that a defendant will not be haled into jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts).

In this regard, the instant case is factually similar to AGS International Services S.A. v. Newmont U.S.A. Ltd., 346 F.Supp. 2d 64, 75-76 (D.D.C. 2004). In AGS, the plaintiff sued a number of foreign corporations in this Court. See Id. at 66. The plaintiff alleged that one of the defendants was subject to the general jurisdiction in the District of Columbia, because it both had an office within the District (staffed by one employee) and it was "doing business" because it had dealings with foreign embassies, the U.S. government and various trade associations within the District. See Id. at 75-76. Judge Walton held that the AGS plaintiff had not met its burden in proving jurisdiction over the defendant, in part because

> [the defendant]'s presence in the District is solely for the purpose of maintaining relationships with the United States government and foreign embassies, not for the sale or marketing of [the defendant]'s services. Furthermore, it would not comport with due process for this Court to exercise general jurisdiction over [the defendant] because of its contacts with foreign embassies, as the District of Columbia is the only district in the country where these embassies are located. [The defendant]'s ability to maintain diplomatic relations with other countries is facilitated by its presence in the District, which is not the type of contact worthy of consideration for jurisdictional purposes under § 13-334(a).

Id. (internal citations omitted).

The Plaintiff also suggests that the Defendant may have other contacts with the District of Columbia that are sufficient to permit the exercise of general jurisdiction. The Plaintiff asserts (but offers no proof) that the Defendant may have met with various foreign officials, adoption-

related agencies, agencies of the federal government and unspecified international organizations. If such meetings indeed took place, they would almost certainly fall within the "government contacts exception" to general jurisdiction within the District of Columbia. See Fandel v. Arabian American Oil Company, 345 F.2d 87, 88-89 (D.C. Cir. 1965)(where foreign corporate defendant maintained continuing relationships with the State Department, executive agencies of the U.S. government, diplomatic missions and other organizations interested in the Middle East, defendant was found not to have been "doing business" within the District of Columbia); see also AGS, 346 F.Supp. at 75-76.

In fact, the only expectation that the parties had would be that any disputes over the agreement would be handled under Illinois law. Though a "choice of law" provision in a contract is not dispositive of where a dispute should be heard, having such a provision weighs in favor of granting jurisdiction to the forum specified in the contract. See Burger King, 471 U.S. at 481-82 (though choice of law provision, standing alone, was insufficient to confer jurisdiction, defendant "purposefully availed himself of the benefits and protections of [the forum state's] laws" by entering into contracts that expressly provided that such laws would govern any disputes).

**D.    The Plaintiff's Request for Discovery**

The Defendant respectfully asks that the Plaintiff's request for discovery on the issue of jurisdiction be denied. Because the Defendant successfully challenged the exercise of jurisdiction in the United States District Court for the District of Maryland, the Plaintiff was made aware that this case presented a jurisdictional hurdle, over which he has the duty to leap if he desires to bring it in the forum of his choice. Knowing this, he has failed to make the appropriate inquiries necessary to meet his burden of establishing jurisdiction in the District of Columbia. Furthermore, the Plaintiff's own assertions that he had numerous meetings with the Defendant's representatives and his evident familiarity with the Defendant's operations show that he has the means to discover such information upon diligent investigation. See Herero

<u>People's Reparations Corp. v. Deutsche Bank AG</u>, 2003 U.S. Dist. LEXIS 27086, Civil Action No. 01-01868, 32-33 (D.D.C. 2003)(where plaintiff failed to demonstrate that they can supplement jurisdictional allegations, request for discovery denied).

WHEREFORE, Defendant, The Cradle Society, Inc., respectfully requests that this Court dismiss the Plaintiff's Complaint.

                           MACLEAY, LYNCH, GREGG & LYNCH, P.C.

                           By: _____/s/_____
                                 Robert P. Lynch #416824
                                 1629 K Street, N.W.
                                 Suite 802
                                 Washington, DC 20006
                                 (202) 785-0123
                                 (202) 393-3390 (fax)
                                 *Counsel for Defendant,*
                                 *The Cradle Society, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was delivered by electronic mail this 22nd day of August, 2006, to:

   John D. Quinn, Esq.
   910 16th Street, N.W., Suite 500
   Washington, D.C.  20006
    *Counsel for Plaintiff*

                               _____/s/_____
                               Robert P. Lynch